### WILLIAMS v. STATE OF INDIANA.

[No. 24,368.   Filed May 14, 1924.]

HOMICIDE.—*Evidence.*—*Sufficiency.*—Evidence *held* insufficient to sustain conviction for assault with intent to kill.

From Fountain Circuit Court; *Barton S. Aikman,* Special Judge.

Prosecution by the State of Indiana against Joseph Williams for assault with intent to kill. From a judgment of conviction, the defendant appeals. *Reversed.*

*A. T. Livengood,* for appellant.

*U. S. Lesh,* Attorney-General, and *D. F. Stansbury,* for the State.

EWBANK, C. J.—Appellant was charged with a felonious attempt to commit a violent injury on the person of H. N. by purposely shooting at him with a pistol loaded with gun powder and leaden bullets with intent to kill and murder him, which injury appellant was alleged to have had the present ability to commit. The jury found him "guilty of assault with intent to kill and murder, as charged." Overruling the motion for a new trial is assigned as error, and under this assignment, appellant first insists that the verdict is not sustained

by sufficient evidence. The question thus presented for decision is not merely whether appellant had misbehaved in an unlawful manner, but it is whether or not there was evidence which fairly tended to prove him guilty of the particular offense with which he was charged and for which he was convicted, of shooting at H. N. with intent to murder him.

There was undisputed evidence that appellant fired off a pistol or revolver after nine o'clock at night on December 7, 1922, while standing in a dooryard where it was dark, one square from the nearest street light, some of the light from which was reflected by the side of a house near by; that when he fired it, he was close to the northwest corner of the house in which Wesley Maines lived with his wife; that four or more persons (some witnesses said a dozen) were in a dooryard in front of the Maines house, south of where he stood; that immediately south of that house was a vacant space, forty feet or more in width, and next south of that was the house in which the prosecuting witness lived with his wife and family, along the north side of which he was walking west, toward the street, when the shot was fired; that the space between the two houses was unlighted, and was so dark that nothing in there could be seen by the state's witnesses who were in their yards or on their porches, across the street; that both houses fronted toward the west, and stood about ten feet from the street, and each had a porch or platform, in front of it, with steps; that from where appellant stood when the shot was fired to where the prosecuting witness was walking between the two houses was about sixty-five feet; that appellant and the prosecuting witness had been friends for a year or more, and appellant had visited the home of the prosecuting witness many times, and was there talking with him earlier that same evening when the wife of the prosecuting witness and the

wife of a neighbor started to a picture show; that he had loaned money to the prosecuting witness, and they had worked together in butchering and otherwise, and that, after the shooting, he also visited there when the prosecuting witness was at home three or four times, not long before the trial; that a week before the shot was fired, the prosecuting witness had quarreled with his wife about appellant being so much in her company, and had beaten her so that she was unable to work for some days, and at or immediately before the time when the shot was fired, he was upbraiding her in a loud voice because she and the neighbor's wife had ridden home from the picture show in appellant's automobile, and he and she were "rag-chewing" so loud as to attract the attention of neighbors across the street. Appellant testified that he fired toward the ground, and that he had no intent to injure anybody, but that his purpose was to attract a crowd that would prevent the prosecuting witness from beating his wife; of the two witnesses who stood close to him when the shot was fired, one said that appellant "shot down", and the other that "he shot toward the ground." The other witnesses were so far away that they only inferred the direction in which the pistol was pointed from seeing the flash of fire when it was discharged, but said that the flash appeared to go south, in the direction toward where the prosecuting witness was. All of the witnesses testified that the prosecuting witness was not in sight when the pistol was discharged, even the prosecuting witness stating that the house was between him and appellant as he walked toward the street until he heard the shot, and then he looked up and saw appellant facing him and saw the flash of the revolver, which seemed to come in his direction. And while he and other witnesses testified that they saw appellant when he was firing the shot, there was no evidence tending to prove that the

prosecuting witness was seen or could be seen from where the appellant stood, or from anywhere else, as he passed along north of his house, through the space between it and the house next to it.   There was no evidence that the pistol was loaded with a bullet, or that a bullet fired from it was ever found, or that any place was found where it had struck, or that it was heard to fly past, or that its course was traced in any way, or that appellant had made any threats, or that he said anything at the time.   We do not think the evidence was sufficient to prove that he attempted to commit murder.   Appellant's motion for a new trial should have been sustained.                              •

Other questions discussed by counsel may not arise upon a retrial of the case.

The judgment is reversed, with directions to sustain the motion for a new trial.